# THE LAW OFFICES OF DANIEL FELBER

100 PARK AVENUE, SUITE 1600 NEW YORK, NEW YORK 10017  
TEL: 212.425.4250 | FAX: 212.422.4605  
WWW.FELBERLAW.COM

DANIEL FELBER  
―――――  
DANIEL@FELBERLAW.COM

November 23, 2016

**VIA ECF**  
Hon. Kenneth M. Karas  
United States District Court  
Southern District of New York  
300 Quarropas Street, Courtroom 521  
White Plains, New York 10601

                                                       *Re:     Martinez v. Lincoln Park Jewish Center*  
                                                            *Docket No. 16 CV 00286 (KMK)*

Dear Judge Karas:

      We are the attorneys for Plaintiff Patrick Martinez ("Plaintiff") in the above-referenced action which is brought pursuant to the Fair Labor Standards Act and the New York Labor Law. We have conferred with counsel for Defendant Lincoln Park Jewish Center, Inc. ("Defendant" or "LPJC") to address the Court's concerns in its October 21, 2016 Order (ECF Docket No. 19) denying without prejudice the Parties' request for the acceptance of the Proposed Settlement. The Parties have revised the Negotiated Settlement Agreement and Mutual Release ("Agreement") accordingly. Specifically, the Parties have limited the scope of the mutual releases and provided support for the provision of attorneys' fees. A true and correct fully-executed copy of the modified Agreement is attached hereto as **Exhibit A**. A redlined copy of the Agreement is attached hereto as **Exhibit B**. A true and correct copy of the undersigned counsel's time entries on this matter is attached hereto as **Exhibit C**. The Parties respectfully reapply for approval of the settlement.

**I.**     **THE MUTUAL RELEASES IN THE REVISED SETTLEMENT AGREEMENT HAVE BEEN MODIFIED AND LIMITED TO EMPLOYMENT-RELATED CLAIMS AND ARE FAIR AND REASONABLE.**

      In its October 21, 2016 Order, the Court expressed concern that: (1) the Proposed Settlement's release provisions are overbroad; (2) § 4(a)(i) requires Plaintiff to withdraw all claims against Defendant's subsidiaries and related entities; and (3) § 4(a)(iii) requires Plaintiff to dismiss any class action claims to which he is a party and to terminate his membership in any class action against Defendant and its related entities. (ECF Docket No. 19, Order, pp. 4-5).

      The Parties have addressed the Court's second concern by removing the language in § 4(a)(i) referencing Defendant's "present and former parent corporations, subsidiaries, divisions, affiliated entities, predecessor entities, [and] successor entities[.]"

Hon. Kenneth M. Karas
November 23, 2016
Page 2 of 7

      The Parties respectfully submit that the Court's first and third concerns regarding overbreadth may not be applicable in the non-class context. In *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), the Second Circuit, in dicta, appeared to disapprove FLSA settlements containing an overbroad release that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues[,]" citing Judge Kaplan's decision in *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015). However, for the reasons explained by Magistrate Cott in *Souza v. 65 St. Marks Bistro*, 15-CV-327 (JLC), 2015 U.S. Dist. LEXIS 151144, at *21-24 (S.D.N.Y. Nov. 6, 2015), the concerns regarding overbroad releases that were discussed in *Nights of Cabiria* are not applicable in the context of a non-class settlement:

> The court in *Nights of Cabiria* reasoned that in the class action context settlements are only fair if they release claims that are related to the facts at issue in the current case. Accordingly, it concluded that an FLSA settlement is only fair if its release is similarly limited. **However, a class action settlement is different from an FLSA (non-class) settlement**. In the FLSA context, the settlement only binds the parties, which is not true in the class context. In an FLSA case, the individual employees are much more likely to know what other potential claims they have against the employer and value them appropriately. The insulating effect of a general release in the class action context is much broader. . . .
>
> By contrast, **in the FLSA context, the settlement only binds the parties to the suit and the employee should know the other claims she potentially has against her employer. She should then be able to properly value those additional claims**. In short, as compared to the class action context, there is a much smaller likelihood that other claims will be unfairly extinguished in an FLSA settlement. This is highlighted by the fact that the court can inquire of the plaintiff whether she is aware of any other claims she has against the employer, and whether she understands that she is forfeiting any claims that are currently unknown to her as part of the settlement approval process. **If the employee can think of no other claims, then it would be an anomalous result to say that a general release is unfair given that the agreement to one amounts to zero cost to that plaintiff as there is no other claim that could be brought. In fact, the court would be refusing the settlement on the ground that it is unfair to the plaintiff, even though the plaintiff and her lawyer can think of no set of facts under which the settlement would be unfair**. If a plaintiff says that there are other claims she envisions (for example, a slip and fall

>in the kitchen in a case brought by a restaurant worker against the restaurant), then the court could inquire as to whether the settlement value properly accounts for this claim. If it is not properly accounted for, then the settlement could be rejected or alternatively that claim could be carved out.
>
>Lastly, the court in *Nights of Cabiria* observed that such a broad release "confers an uncompensated, unevaluated, and unfair benefit on the employer." 2015 U.S. Dist. LEXIS 42554, 2015 WL 1455689 at \*7. **If an FLSA plaintiff is represented by counsel, it is hard to understand how a general release would confer an unevaluated and uncompensated benefit to the employer if, to justify the settlement, a lawyer has to represent to the court that the lawyer has explored other potential claims with the employee and the employee, with counsel's aid, can identify no additional basis to sue the employer and also acknowledges that she is forfeiting any claims currently unknown to her.** At this point, the issue is certainly evaluated and while it is uncompensated, it is only because there is nothing to compensate.

*Id.* (emphases added); *see also Lopez v. Poko-St. Anns L.P.*, 176 F. Supp. 3d 340 (S.D.N.Y. 2016) ("Because this case is not a class action, at least one of the dangers posed by an overbroad release—that it would bind class members who had no bargaining power concerning the settlement terms—is not present here.")

Moreover, a settlement that provides for mutual releases of claims "assuag[es] concerns that the waiver unfairly benefits only Defendants." *Lola v. Skadden*, No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at \*5 (S.D.N.Y. Feb. 3, 2016) (finding nothing "nothing inherently unfair about a release of claims in an FLSA settlement" and approving FLSA settlement containing mutual release of non-FLSA claims that were the result of a balanced negotiation in which plaintiffs were represented by able counsel); *see Souza,* 2015 U.S. Dist. LEXIS 151144, at \*18-19 ("A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation."). In the cases cited in this Court's October 21, 2016 Order that rejected settlements that included broad releases waiving non-FLSA claims against defendants, the releases were not mutual and protected only the defendants in the action. *See Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, 14-CV-2824 (SIL), 2015 U.S. Dist. LEXIS 146272, at \*7-10 (E.D.N.Y. Oct. 28, 2015); *Flood v. Carlson Rests., Inc.*, 14 Civ. 2740 (AT)(GWG), 2015 U.S. Dist. LEXIS 88068, 7-8 (S.D.N.Y. July 6, 2015); *Mahalick v. PQ N.Y., Inc.*, 14 Civ. 899 (WHP), 2015 U.S. Dist. LEXIS 68316, at \*5-6 (S.D.N.Y. Apr. 30, 2015).

Hon. Kenneth M. Karas
November 23, 2016
Page 4 of 7

Under the authorities cited above, mutual general releases are appropriate in this single-plaintiff non-class action. Nonetheless, the Parties have addressed the Court's first and third concerns by modifying and limiting the language of the mutual releases in §§ 4(a)(ii) and (iii) and 4(b) of the Proposed Settlement to *employment-related* claims. Significantly, the scope of Plaintiff's lawsuit is not limited to wage and hour issues. In addition to asserting claims for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Law § 190, *et seq.* ("NYLL") and spread of hours pay under the New York Department of Labor Regulations, 12 N.Y.C.R.R. §142-2.4, Plaintiff alleged that the terms and conditions of his employment were governed by a written employment agreement and that his employment was terminated in retaliation for complaining that he was not receiving his just compensation and wages, in violation of the NYLL.[1] (Complaint, ¶¶ 16-17, 51-52). Therefore, the Parties have appropriately bargained for, and negotiated, a settlement in which the mutual releases cover all potential claims arising from or relating to the allegations concerning Plaintiff's employment and Defendant's potential defenses. *See Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 107 (2d Cir. 2005) (holding that class action releases "may include claims not presented and even those which could not have been presented," but only when the released conduct arises out of the identical factual predicate as the settled conduct."); *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 182 ("The parties have every right to enter into a settlement that waives claims relating to the existing suit in exchange for a settlement payment."); *Panganiban v. Medex Diagnostic & Treatment Ctr.*, LLC, 15 Civ. 2588 (AMD) (LB), 2016 U.S. Dist. LEXIS 29158, at *7-9 (E.D.N.Y. Mar. 7, 2016) (approving settlement containing broad general release where complaint included claims unrelated to wages).

Plaintiff's counsel affirms that he has: assessed the value of Plaintiff's asserted retaliatory discharge claim in light of his mitigation efforts; explored other potential claims with Plaintiff and cannot identify any additional bases to sue Defendant; and explained to Plaintiff that he is releasing any employment-related claims that may be unknown to him in exchange for a similar release from Defendant and the consideration described in the Agreement. *See Ocasio v. Big Apple Sanitation, Inc.*, 13-CV-4758 (CBA) (LB), 2016 U.S. Dist. LEXIS 34942, at *4-5 (E.D.N.Y. Mar. 16, 2016) (finding revised settlement language that limited release to claims arising out of same facts underlying instant claims did not offend the FLSA because plaintiff's counsel averred that plaintiff explored with counsel other claims and understood what claims he was giving up in signing release), *adopted by*, 2016 U.S. Dist. LEXIS 131545, at *4-5 (E.D.N.Y. Sept. 26, 2016).

Accordingly, the Parties respectfully submit that the mutual limited releases in the Proposed Settlement are fair and reasonable.

---

[1]  LPJC denies that Plaintiff ever complained that he was not receiving overtime wages and contends that it terminated Plaintiff's employment because of Plaintiff's unauthorized use of a synagogue credit card for personal reasons and because he spoke in a disrespectful manner toward LPJC's Rabbi and Board members.

Hon. Kenneth M. Karas
November 23, 2016
Page 5 of 7

## II. THE REQUESTED FEE IS REASONABLE UNDER THE LODESTAR AND THE GOLDBERGER FACTORS.

### A. Plaintiff's Counsel's Hourly Rates Are Reasonable

Both the Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment that is inherent in contingency cases and monetary capital that could otherwise have been employed had counsel been paid on a current basis during the pendency of the action. *See, In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S. Ct. 2463, 2469 (1989).

The hourly billing rate to be applied is the attorney's normal hourly billing rate, so long as that rate conforms to the billing rate charged by attorneys with similar experience in the community where the counsel practices, i.e., the "market rate." *See, Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541 (1984), 465 U.S. at 895; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Blum, supra.*

Counsel affirms that the firm's effective hourly rate, as reflected in the attached time entries when juxtaposed upon the instant attorney fee request, is below the regular rates charged by the firm ($475/hour) and is well within the range of the rates charged by attorneys where the firm is located. Counsel devoted 46.7 hours to performing work for the benefit of the plaintiff, for a minimum lodestar of $22,182.50. The fee requested herein represents a lodestar multiplier of less than Counsel's lodestar. Put another way, counsel is asking for 20% less in fees than the amount of time he billed in this case.

### B. Counsel's Requested Lodestar Multiplier is Reasonable.

Once Counsel's lodestar is calculated, "a multiplier is [then] typically applied." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (citing *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)). The multiplier represents the "litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id*. at 466 (citing *Goldberger*, 209 F.3d at 47). When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in settlements of comparable value." *In re Veeco Instruments Secs. Litig.*, 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554 at *24 (S.D.N.Y. Nov. 7, 2007) (approving a 30% fee).

### C. The Goldberger Factors Confirm That The Requested Fee Is Reasonable.

In *Goldberger*, the Second Circuit set forth the following criteria for courts in this Circuit to consider when analyzing fee applications: (1) the magnitude and complexities of the action; (2) the litigation risks involved; (3) the quality of class counsel's representation; (4) the size of the requested fee in relation to the recoveries obtained; (5) the time and labor expended by class counsel; and (6) public policy considerations.  209 F.3d at 50.

Consideration of the foregoing *Goldberger* factors demonstrates the reasonableness of counsel's present fee request. Counsel devoted substantial time and effort to the prosecution of the claims asserted in this action. It was not until after counsel engaged in extensive fact discovery and participated in intensive negotiations that this settlement became possible. Moreover, Defendant vigorously disputed Plaintiff's version of the facts and the hours he claims he worked; asserted various defenses, including the failure to allege facts demonstrating that Defendant is a covered entity under the FLSA; and raised serious concerns about its ability to pay any judgment in the event of protracted litigation. *See, also, McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 424 (2d Cir. 2010) ("[t]he level of risk associated with litigation . . . is 'perhaps the foremost factor' to be considered in assessing the propriety of a multiplier" (quoting *Goldberger*, 209 F.3d at 54)).

The contingency risk here was very significant and fully supports the requested fee. Counsel undertook this action on a strictly contingent-fee basis, and prosecuted the claims with no guarantee of compensation or recovery of any of the significant litigation expenses he incurred. *See, in re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (counsel not only undertook risks of litigation, but advanced its own funds and financed the litigation). Although Counsel worked diligently and succeeded in developing a compelling case sufficient to influence Defendant's decision to resolve the action at this juncture, Counsel recognized that there were significant uncertainties and risks from the outset as to proof of liability and damages and of potential juror confusion that favored early resolution.

### D. The Litigation Expenses Are Reasonable and Were Necessarily Incurred To Achieve The Settlement.

Counsel also requests reimbursement of litigation expenses that were reasonably and necessarily incurred in their prosecution and settlement of the action. Indeed, it is well accepted that counsel is entitled to the reimbursement of expenses that they advanced. *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (attorneys may be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, if they were 'incidental and necessary to the representation…'") (citation omitted).

Counsel submits that the two expenses (filing fee and service of process fee) were reasonable and necessary to prosecuting the claims and achieving the Settlement.  Counsel has not been reimbursed for any of these expenses.

Hon. Kenneth M. Karas
November 23, 2016
Page 7 of 7

### III.     CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the settlement and execute the Stipulation and Order of Final Dismissal With Prejudice appended as Exhibit "A" to the settlement agreement. In addition, Plaintiff's counsel respectfully requests that the Court grant his request for (a) an award of attorneys' fees in the amount $18,150, or approximately 33.3% of the $55,000 settlement, and (b) reimbursement of Counsel's litigation expenses in the amount of $493.25, to be paid out of the Settlement. In the event Your Honor should require additional information, the Parties respectfully request a telephone conference to address any of the Court's inquiries.

The parties thank the Court for its time and attention to this application.

Respectfully submitted,

*Daniel Felber*

Daniel Felber

Attachments
cc:     Jennifer B. Courtian, Esq. (via ECF)
        Ravindra Shaw, Esq. (via ECF)